EMILY SHAKER, ADMX. c.t.a.
*vs.*
GEORGE SHAKER

Superior Court      Fairfield County      File No. 60234

MEMORANDUM FILED JANUARY 18, 1941.

*Wilson, Hanna & Wanderer,* of Danbury, for the Plaintiff.

*Pullman & Comley,* of Bridgeport, for the Defendant.

KING, J.   This is an action for damages for the alleged wrongful death of the plaintiff's decedent, an occupant of a motor vehicle operated by the defendant, claimed to have resulted from negligent and reckless operation of the motor vehicle by the defendant.   The defendant demurred to the complaint.

In plaintiff's trial brief it is stated that the defendant was the "infant and unemancipated son" of the decedent, and these facts should be made the subject of a formal stipulation and lodged in the files of this action.   In reliance that this will be done, because of assurances of counsel, the court is deciding this demurrer as treated by the parties, instead of overruling it because of failure of the parties properly to draft their pleadings to raise the precise issue called in question by the demurrer.   *New Haven vs. New Haven Water Co.,* 118 Conn. 389, 403.

The demurrer, so treated, raises the question of the existence of a right of action in tort for the wrongful death of a parent against his unemancipated minor son.

The question really divides itself into two parts: first, could the decedent himself, if the injuries had not been fatal, have maintained an action for damages for personal injuries against his unemancipated minor son; and, second, are the plaintiff's rights, as the decedent's personal representative, greater or less than, or the same as, those of the decedent had he himself, while alive, sued this defendant for non-fatal personal injuries?

The question appears not to have been decided in this State.

I

It has been decided that no action will lie against a parent,

by his unemancipated minor child, for damages for a personal injury suffered by the child as a result of the parent's tort. *Mesite vs. Kirchenstein,* 109 Conn. 77, 82; *Chase vs. New Haven Waste Material Corp.,* 111 id. 377, 380. The reasons for this rule, given in the report of the *Mesite* case, on pages 83 *et seq.,* are clearly grounded on considerations of public policy, and may be summarized as follows: (1) the family contentions incident to such controversies provoke disobedience, and in that and other respects undermine the family relationship; (2) a child has no legal entity independent of his parents, giving him the right to sue "or be sued" in his own name; and (3) the child is dependent upon his parent during minority for care, protection, control and education.

Certainly there could be no less objection on grounds of public policy to the converse of that situation, raised in a suit by the parent against the child. If anything, the considerations would be stronger, since the law jealously guards children, even after attainment of their majority, against overreaching on the part of such few parents as do not naturally have the welfare of their children uppermost in their minds and hearts. *Preston vs. Preston,* 102 Conn. 96, 112.

It follows that this action could not have been maintained if the decedent himself, while alive, had brought an action in tort for non-fatal personal injuries proximately caused by his unemancipated minor child's negligence or other tort.

## II

The plaintiff, although disagreeing with the foregoing conclusion, claims that even if it were correct, the rule would not bar a cause of action such as that in the instant case, where the action is not at common law for non-fatal personal injuries, but is the statutory action for wrongful death authorized by sections 1430e and 1432e of the 1939 Supplement to the General Statutes.

Section 1430e, through its predecessor, section 5987 of the General Statutes, Revision of 1930, and section 1432e, through its predecessor, section 6030 of the General Statutes, Revision of 1930, have been construed in many cases.

In the instant case, if the death was not instantaneous, and there is nothing in this complaint to indicate whether it was or was not, an action brought for personal injuries and death has been judicially construed to cover (by virtue of §6030)

the injuries and losses suffered by the decedent up to the time of his death, and (by virtue of §5987) additional damages for the death itself, the whole sum not to exceed the statutory limit of $15,000. *Kling vs. Torello,* 87 Conn. 301, 305; *Mezzi vs. Taylor,* 99 id. 1, 7; *Davis vs. Margolis,* 108 id. 645, 647.

Since the decedent himself had no cause of action there was nothing to survive under section 6030 (now §1432e), which in terms covers only two situations: (1) where a cause or right of action exists but has not been sued upon prior to death, and (2) where a civil action or proceeding has been brought and death occurs during its pendency. The first situation exists here.

The element of damage for the death itself has been held by many of our cases to have been added, by the provisions of section 1430e, to the cause of action for the injury existing, in legal theory in any event, and in actuality where death is not instantaneous, in the decedent during his lifetime. *Davis vs. Margolis, supra,* 648; *Burkhardt vs. Armour & Co.,* 115 Conn. 249, 253.

This additional element is an additional element of damage. It has nothing to do with a new cause of action. Therefore it could not exist except in connection with the other right of action, even where, as in the case of an instantaneous death, it is the sole element of damage. *Kling vs. Torello, supra,* 305.

The General Assembly, in enacting the predecessor of section 6030, provided in terms that, except as specifically exempted by the provisions in the statute; (1) no cause or right of action should be destroyed because of the death of a party, and (2) no civil action or proceeding brought during a party's lifetime, and pending at his death, should abate by reason of his death.

As applied to situations involving personal injuries caused by torts, this abrogated at least two common-law rules: (1) that the death of the injured party destroyed the cause or right of action for damages for the pain, suffering, expenses and other ante mortem elements of damage, and (2) that the death of the injured party abated any pending civil action or proceeding for the recovery of such damages. *Orr vs. Ahern,* 107 Conn. 174. We are concerned in this case only with the first of these two statutory changes. The effect of this, with-

out regard to section 5987, was at least to permit a recovery by the personal representative for all such ante mortem elements of damage. *Kling vs. Torello,* 87 Conn. 301, 306.

But there still remained the common-law rule that death was not itself an element of damage. *Lucier vs. Hittleman,* 125 Conn. 635, 636. The logical effect of this rule has been held even after the enactment of what is now section 1432e, to deny anything other than merely nominal damages where death was instantaneous, because the decedent himself (eliminating the element of damage for death) had neither conscious suffering nor other injuries, and 6030 merely gave to the personal representative whatever rights the decedent had had. To some extent the General Assembly desired to abrogate this situation, and did so by various enactments culminating in section 1430e. The effect of this legislation has been held to be to allow the additional element of damage for death to an amount which, with all ante mortem elements of damage, shall not exceed a total of $15,000. *Kling vs. Torello, supra; Davis vs. Margolis, supra; Burkhardt vs. Armour & Co., supra,* 253.

It is true that *Porpora vs. New Haven,* 122 Conn. 80, 93, following *Goodsell vs. Hartford. & New Haven R.R. Co.,* 33 id. 51, 55, and overruling the *Burkhardt* case, may be construed as holding that damages for the element of death itself are given by virtue of section 6030. At the earliest opportunity after the decision in the *Porpora* case, and before the cause of action in this case arose, the General Assembly amended section 5987 (by §1430e) eliminating all restrictions therein contained as to the type of action for which damages for wrongful death may be recovered, thereby obviating any future possible necessity for determination of the effect of such restrictive language, as referred to at the bottom of page 95 in the opinion in the *Porpora* case. The *Hittleman* case has since reaffirmed the common-law rule that death is not at common law an element of damage, which was the basis for the decision in the *Burkhardt* case.

Any speculations as to the present state of our law in view of the decision in the *Porpora* and *Hittleman* cases are, however, irrelevant to the decision of the demurrer in this case, since if the plaintiff's right of action for the death itself as an element of damage, as well as her right of action for any ante mortem damages sustained by the decedent during his life-

time in the event that death was not instantaneous, alike are derived solely from section 1432e, as held by the *Porpora* case, then it is even clearer, if anything, that since the decedent had no right of action while living, none could survive to the plaintiff.

Cases from other jurisdictions, although few in number, tend to support the foregoing conclusions (Anno. 72 A.L.R. 453, and supplemental decisions in Blue Book of Supplemental Decisions [Rev. 1939]). The case of *Oliveria vs. Oliveria,* 305 Mass. 297, 25 N.E. (2d) 766, 767, also holds in accord-ance with the first conclusion, and its holding that such a right of action, although not existing in the case of non-fatal in-juries, does exist in case of death, is based squarely on the fundamental concept of the Massachusetts wrongful death statute, which, like all such statutes based upon Lord Campbell's Act, creates a new cause of action for wrongful death (Id. 768; *Kling vs. Torello, supra,* 304). Such a statute must be distinguished from our own statute (§1430e), which at most adds an additional element of damage for the death itself to the cause or right of action, or to the actual civil action or proceeding, as the case may be, surviving to the personal rep-resentative by virtue of the provisions of section 1432e. *Davis vs. Margolis, supra,* 647; *Porpora vs. New Haven, supra,* 93.

The demurrer is sustained.